**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JOHN GARFIELD, # N-72615,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-cv-00937-MJR |
| ) | |
| **DENNIS FURLONG, JAY SWANSON,** ) | |
| **DEBBIE ISAACS, NICK NELLY,** ) | |
| **ZACHARY ROECKMAN,** ) | |
| **ASST. WARDEN CREAG,** ) | |
| **S. A. GODINEZ, DR. LARSON,** ) | |
| **and LOUIS SHICKER,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff John Garfield, an inmate who is currently incarcerated at Pontiac Correctional Center ("Pontiac"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 (Doc. 1). According to the complaint, Plaintiff was denied adequate dental care during his incarceration at Big Muddy River Correctional Center ("Big Muddy CC") in 2012-13. Plaintiff now sues nine defendants in connection with this alleged deprivation of his Eighth Amendment rights. He seeks declaratory judgment, monetary damages, and injunctive relief (Doc. 1, pp. 21-23).

## The Complaint

While incarcerated at Big Muddy CC, Plaintiff lost a filling in his #2 tooth and cracked one of his lower right teeth (Doc. 1, p. 6). In October or November 2012, he submitted a written request for a new filling in the #2 tooth and extraction of the cracked tooth. At the time, he was suffering from "extrem[e] and excruciating pain" (Doc. 1, p. 6).

Big Muddy CC's dentist, Defendant Furlong, was convinced that both teeth should be extracted[1] (Doc. 1, p. 7). On January 31, 2013, he attempted to extract the #2 tooth. However, he was unable to complete the procedure successfully and returned Plaintiff to his cell in excruciating pain. Defendant Furlong again attempted to complete the procedure on February 7th and, this time, broke the #2 tooth off in Plaintiff's sinus "canal." Rather than send Plaintiff to an oral surgeon on an emergency medical writ, however, Defendant Furlong returned Plaintiff to his cell in more pain than ever (Doc. 1, p. 8).

Defendant Furlong again attempted to complete the tooth extraction on February 27th and March 4th, each time without success. On March 4th, Defendant Furlong finally agreed to refer Plaintiff to an outside oral surgeon, Defendant Swanson. Plaintiff was forced to endure another thirty days of excruciating pain before his appointment with the surgeon.

On April 4th, Defendant Swanson examined Plaintiff's #2 tooth (Doc. 1, p. 9). He concluded that Plaintiff needed "major surgery soon," but it could not be performed at Defendant Swanson's surgery center. Defendant Swanson instead performed surgery on Plaintiff at Effingham Surgery Center on April 10th (Doc. 1, p. 10). The procedure was supposed to take ninety minutes but instead took 5½ hours. No one would tell Plaintiff why.

On April 17th, Plaintiff was placed in segregation, following the issuance of a false disciplinary ticket by Defendant Nelley. Defendant Nelley told Plaintiff that he could do anything he wanted to Plaintiff and get away with it (Doc. 1, p. 10). When Plaintiff requested medical care, it was refused. He was "forced to act out and get 2 more additional disciplinary

---

[1] The complaint only addresses treatment of Plaintiff's #2 tooth. For that reason, it is not clear whether Plaintiff's cracked lower right tooth was ever extracted.

reports just to receive medical treatment" (Doc. 1, p. 10).  Plaintiff stopped eating and flooded his cell (Doc. 1, p. 11).

The following day, on April 18th, he met with Defendant Larson, the medical director at Big Muddy CC.  At the time, Plaintiff was suffering from extreme pain and excessive bleeding in his mouth (Doc. 1, p. 12).  He had a fever, which one of the nurses, Defendant Isaacs, listed as 100 degrees in his medical records when it was actually 103 degrees (Doc. 1, p. 16).  Defendant Larson increased Plaintiff's dosage of antibiotics and sent Plaintiff on another emergency medical writ to meet with Defendant Swanson, who cleansed Plaintiff's mouth with "some type of cleaning solution" (Doc. 1, pp. 11-12).

On May 2nd, Plaintiff met with Defendant Larson, who told him that he would soon see Defendant Swanson for a follow-up appointment (Doc. 1, p. 12).  No appointment was scheduled.  Plaintiff continued suffering from excruciating pain.

On May 18th, the right side roof of Plaintiff's mouth "fell out."[2]  This was the same area where Defendant Swanson had performed surgery.  Plaintiff advised one of Big Muddy CC's nurses, Defendant Pickering, what had happened, but she took no action.  Weeks later, he advised the same nurse that teeth surrounding this area were becoming loose, and she took no action.

Plaintiff sought help from another nurse[3] on May 18th, and she set up an appointment with Defendants Larson and Furlong on May 21st.  At the appointment, Defendant Furlong merely shook his head and asked Plaintiff if he had experienced this much bleeding since his surgery; Plaintiff confirmed that he had.  On May 28th, Defendant Furlong

---

[2] This phrase is not defined in the complaint.
[3] This nurse is not named as a Defendant in this action.

took x-rays of the area and placed a call to Defendant Swanson; shortly after the examination, the right side roof of Plaintiff's mouth "fell out" once again (Doc. 1, p. 14).

On May 29th Defendant Nelley spoke with Plaintiff about his placement in segregation (Doc. 1, p. 15). He tried to convince Plaintiff to "sign some papers," with a promise to let Plaintiff out of segregation "like this never happened." Plaintiff declined the offer. Thereafter, he was transferred to Pontiac.

In July or August 2014, Plaintiff met with a medical provider who recommended an appointment with an oral surgeon. As of the date he filed this complaint, Plaintiff had lost eight teeth (Doc. 1, p. 17).

Plaintiff now sues all Defendants for violating his right to receive adequate medical care under the Eighth Amendment (Doc. 1, p. 19). This includes Defendants Furlong, Swanson, Isaacs, Nelley, and Larson. Plaintiff also brings this claim against Defendants Godinez (Illinois Department of Corrections ("IDOC") director), Shicker (IDOC medical director), Roeckman (Big Muddy CC warden), and Creag (Big Muddy CC assistant warden), who allegedly had a duty to intervene and provide him with access to adequate medical care, but failed to do so (Doc. 1, p. 16). He seeks declaratory judgment, monetary damages, and injunctive relief (Doc. 1, pp. 21-22).

## Merits Review Under 28 U.S.C. § 1915A

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by

law is immune from such relief. 28 U.S.C. § 1915A(b). The complaint survives preliminary review under this standard.

## Discussion

**Count 1 – Dental Claim**

The complaint articulates a colorable Eighth Amendment claim (**Count 1**) for deliberate indifference to Plaintiff's dental needs against Defendants Furlong, Nelley, and Larson, but no other Defendants. The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, a prisoner must show that the: (1) medical condition was objectively serious, and (2) state officials acted with deliberate indifference to the prisoner's health or safety, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

According to the Seventh Circuit, "dental care is one of the most important medical needs of inmates." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (citation omitted). Examples of "objectively serious" dental needs involve circumstances in which the failure to treat a dental condition causes an inmate to suffer an array of problems, such as headaches, extreme pain, bleeding, infected gums, and problems eating. *Id.* at 593 (citations omitted). The allegations in the complaint satisfy the objective component of the test at this stage.

As for the subjective component of the analysis, the complaint must "demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). This state of mind is deliberate indifference. Deliberate indifference is established when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834). At this early stage, deliberate indifference claims have been stated against Defendants Furlong, Nelley, and Larson for delaying or denying access to dental care. Accordingly, Plaintiff shall be allowed to proceed with Count 1 against these defendants.

However, Count 1 shall be dismissed against all remaining Defendants, including Defendants Swanson, Isaacs, Godinez, Shicker, Roeckman, and Creag. It is not clear whether Defendant Swanson is even subject to suit under § 1983. "Section 1983 creates a federal remedy against anyone who, under color of state law, deprives 'any citizen of the United States . . . of any rights, privileges, or immunities secured by the Constitution and laws.'" *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012) (quoting 42 U.S.C. § 1983). No allegations suggest that Defendant Swanson was acting "under color of state law" at the time he provided Plaintiff with services. By all indications, he is a private practitioner who provided Plaintiff with emergency services outside of the prison. The Supreme Court has not yet addressed whether this constitutes state action. *See Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 672 (7th Cir. 2012).

However, even if the Court assumes that Defendant Swanson is a state actor, the complaint states no Eighth Amendment claim against him. This is because no allegations suggest that he responded to Plaintiff's dental needs with deliberate indifference. He first met with Plaintiff on April 4th. At the appointment, Defendant Swanson determined that Plaintiff needed surgery at another facility "soon." He performed the surgery less than one week later. There is no suggestion that Plaintiff's condition worsened in the interim. When Plaintiff suffered from an infection approximately one week after surgery, Defendant Swanson met with him and promptly addressed the infection. Although Plaintiff claims that one follow-up appointment with Defendant Swanson was not scheduled, the allegations do not suggest that Defendant Swanson dropped the ball (nor would this, alone, necessarily rise to the level of deliberate indifference). And while Plaintiff alleges that the roof of his mouth later "fell out" twice, Plaintiff does not define this phrase or indicate that Defendant Swanson knew about this development. At most, Plaintiff's claim against Defendant Swanson amounts to negligence, which is not actionable under § 1983. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012) (holding that a defendant can never be held liable under Section 1983 for negligence, or even gross negligence). Without more, this claim against Defendant Swanson fails.

Count 1 shall also be dismissed against Defendant Isaacs, whose only involvement in this matter included allegedly falsifying Plaintiff's medical records. According to the complaint, Defendant Isaacs recorded Plaintiff's temperature on April 18th as 100 degrees, which was three degrees lower than Plaintiff's actual temperature. This would appear to be negligence, at most, which, again, is not actionable under Section 1983. *Id*. The alleged error did not result in any delay or denial or medical care. Plaintiff was immediately treated for an infection with antibiotics and sent to an oral surgeon for follow-up care.

Count 1 shall also be dismissed against all remaining Defendants, including Defendants Godinez, Shicker, Roekman and Creag. These defendants appear to have been named based only on their supervisory role within the prison system and at Big Muddy CC. However, Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). As a result, the doctrine of *respondeat superior* does not apply to actions filed under Section 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Nothing suggests that any of these Defendants personally participated in care or treatment decisions related to Plaintiff. Further, no allegations suggest that Plaintiff's denial of adequate dental care resulted from a policy, custom, or practice promulgated by these Defendants. In terms of individual liability, the complaint fails to state an Eighth Amendment claim against Defendants Godinez, Shicker, Roekman and Creag.

Further, it is not necessary to allow Plaintiff to proceed against these Defendants in their official capacities, based on Plaintiff's request for injunctive relief. His request arises from the alleged failure to treat his dental condition at Big Muddy CC. He is no longer housed there, and he does not claim that he has been denied adequate dental care at his current facility. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995).

For the reasons set forth above, Plaintiff shall be allowed to proceed with **Count 1** against Defendants Furlong, Nelley, and Larson. However, this claim shall be dismissed without prejudice against Defendants Swanson, Isaacs, Godinez, Shicker, Roeckman, and Creag.

**Count 2 – False Disciplinary Report**

Although the complaint fails to articulate a due process claim against Defendant Nelley based on his issuance of a false disciplinary report, a retaliation claim has been stated. Allegations of false disciplinary reports typically do not state a claim where due process is afforded. *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). The Seventh Circuit has reasoned that the due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses. A hearing before a presumably impartial adjustment committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report. *Hawkins v. O'Leary*, 729 F. Supp. 600, 602 (N.D. Ill. 1990), relying on *Hanrahan v. Lane*, supra, 747 F.2d at 1141. The procedural requirements of a disciplinary hearing protect prisoners from arbitrary actions of prison officials. *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987). The complaint does not allege that Plaintiff was denied due process of law at his disciplinary hearing.

Further, when standing alone, segregation does not implicate a liberty interest unless the length of confinement is substantial and the "record reveals that the conditions of confinement are unusually harsh." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). This is because liberty interests arise from jail policies that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 221-23 (2005); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Here, the complaint provides insufficient details regarding Plaintiff's confinement in segregation

to suggest a claim.  The complaint makes no mention of the length of Plaintiff's confinement and includes few details about the conditions of his confinement.  Under the circumstances, no due process claim has been stated against Defendant Nelley.

However, when construed liberally, the allegations in the complaint do support a retaliation claim against Defendant Nelley.  In order to state a retaliation claim in this context, the complaint must plead sufficient allegations to suggest that: (1) the prisoner engaged in activity protected under the First Amendment; (2) the defendant's actions would deter protected activity in the future; and (3) the prisoner's complaints motivated the defendant's actions. *See Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).  Raising concerns about proper dental care through the grievance process or in a lawsuit is protected under the First Amendment, just as receiving adequate medical care is protected by the Eighth Amendment.  *See, e.g., Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005); *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).  Issuing a false disciplinary report and placing an inmate in segregation, when combined with retaliatory animus, is enough to deter this protected activity.  *See DeWalt*, 224 F.3d at 618; *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987).  Because the chronology of events raises an inference of retaliation, Plaintiff shall be allowed to proceed with **Count 2** against Defendant Nelley at this early stage.

### Request for Injunctive Relief

In the body of his complaint, Plaintiff requests injunctive relief, in the form of a preliminary and permanent injunction revoking certain Defendants' licenses to practice dentistry or medicine and firing other Defendants.  He also seeks corrective dental surgery.  As explained above, Plaintiff's request for permanent injunctive relief, to the extent it arises from conduct at Big Muddy CC, is moot.  He is no longer confined there.  *See Lehn*, 364 F.3d at 871; *Higgason*,

83 F.3d at 811.  To the extent Plaintiff seeks any form of immediate relief, whether in the form of a temporary restraining order or preliminary injunction, he must file a separate motion with this Court under Federal Rule of Civil Procedure 65.

### Pending Motion

Plaintiff has filed a motion to appoint counsel (Doc. 3), which is hereby **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for a decision.

### Disposition

**IT IS HEREBY ORDERED** that Defendants **SWANSON, ISAACS, ROECKMAN, CREAG, GODINEZ,** and **SHICKER** are **DISMISSED without prejudice** from this action based on Plaintiff's failure to state a claim against him upon which relief can be granted.

**IT IS FURTHER ORDERED** that as to **COUNTS 1** and **2,** the Clerk of Court shall prepare for Defendants **FURLONG, LARSON,** and **NELLEY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used

only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, including a decision on Plaintiff's motion to appoint counsel (Doc. 3), pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.* Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or

give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 23, 2014**

**s/ MICHAEL J. REAGAN**
**U.S. District Judge**
