IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN GARFIELD, #N72615          )
                                )
        Plaintiff,              )
                                )
vs.                             )    Case No.  14-cv-937-SCW
                                )
DENNIS FURLONG,                 )
NICK NALLEY, and                )
DR. LARSON,                     )
                                )
        Defendants.             )

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

Plaintiff John Garfield is an inmate currently incarcerated at Dixon Correctional Center. He brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights by Defendants during his incarceration at Big Muddy Correctional Center. This matter is before the Court on two motions for summary judgment, one filed by Defendants Furlong and Larson (Doc. 63) and another filed by Defendant Nalley (Doc. 65). The time for Plaintiff to respond to the motions has passed, with Plaintiff responding only to one. Therefore, Defendants' motions are ripe for disposition. For the reasons articulated below, the Motions for Summary Judgment (Docs. 63, 65) are both **GRANTED**.

### FACTUAL AND PROCEDURAL BACKGROUND

1. **Defendants Furlong and Larson**

Plaintiff's claims against Defendants Furlong and Larson arise from treatment Plaintiff received for a cracked tooth that lead to a fractured root.  It is undisputed that Plaintiff was incarcerated at Big Muddy Correctional Center ("Big Muddy") during 2012 and 2013 before he was transferred to other institutions.  (Doc. 64, p. 2; Doc. 70, p. 1). Plaintiff's claims arise from the time period he was incarcerated at Big Muddy.  (Doc. 64, p. 2; Doc. 70, p. 1).  On January 31, 2013, Defendant Dr. Dennis Furlong, the dentist at Big Muddy, examined Plaintiff in response to Plaintiff's complaint of pain in his number two tooth.  (Doc. 64-1, p. 1).  During that visit, Defendant Furlong diagnosed Plaintiff with having Cracked Tooth Syndrome.  (*Id.*).  On the same day, Plaintiff executed an IDOC Consent for Treatment Form, wherein Plaintiff gave his consent to Defendant Furlong to extract the number two tooth, if necessary.  (Doc. 64-3, p. 16). On this form, above Plaintiff's signature, was a list of six potential risks from the procedure, which included "Displacement of the teeth into the sinuses or other soft tissue spaces requiring additional surgery to remove."  (*Id.*).  Defendant Furlong attempted to remove the tooth on February 7, 2013, due to complaints of pain from Plaintiff.  (Doc. 66-1, p. 4; Doc. 64-3, p. 1).  During the procedure, however, the medial root fractured away from the main body of the tooth.  (Doc. 64-1, p. 2).  It is undisputed that at some point the medial root was lost into Plaintiff's sinus cavity.  (Doc. 64, p. 3; Doc. 70, p. 2).  As best the Court can tell, however, there appears to be a dispute over at what point the root lodged into the sinus canal.  While Defendants Furlong and Larson indicate it was lost during a subsequent, unsuccessful, attempt to remove the fractured

root on March 4, 2013 (Doc. 64, p. 3; Doc. 64-3, p. 1), Plaintiff appears to take the position that the root was lost during the February 7 extraction (Doc. 70, p. 2, 5; Doc. 66-1, p. 5).

On March 9, 2013, due to the loss of the medial root into the sinus cavity, Defendant Furlong submitted an IDOC Medical Special Services Referral and Report requesting permission from the Collegial Review Board of Wexford Health Sources, Inc. ("Wexford") to refer Plaintiff to an outside oral surgeon. (Doc. 64-1, p. 2). On March 15, 2013, Dr. O'Brien of the Collegial Review Board authorized the request to allow Plaintiff to see an outside surgeon. (*Id.*). On April 4, 2013, Plaintiff had an initial visit with Dr. Jay Swanson, an oral surgeon. (Doc. 64-2, p. 2 – 3). During that visit, Dr. Swanson recommended a Caldwell-Luc procedure to remove the root. (*Id.*). On April 8, 2013, Defendant Dr. Dennis Larson, the Medical Director at Big Muddy, approved Dr. Swanson's recommendations, and on April 10, 2013, Dr. Haymes of the Collegial Review Board authorized Plaintiff to have the operation. (*Id.* at 1 – 2, 3). Dr. Swanson performed the operation on April 10, 2013. (*Id.* at 3). Upon discharge, Plaintiff was prescribed pain medication and antibiotics. (*Id.*). When Plaintiff returned to Big Muddy, he was placed in the healthcare unit ("HCU") for 23 hours of observation and treatment, and given the pain medication and antibiotic prescribed by Dr. Swanson. (*Id.* at 3 – 4).

On April 11, 2013, Defendant Larson examined Plaintiff prior to his discharge from the HCU. (*Id.* at 4). Plaintiff indicated that he felt "ok", his mouth was sore, and he could tolerate the pain. (*Id.*). Defendant Larson ordered Plaintiff to follow up in

one week and requested authorization from the Collegial Review Board to allow Plaintiff to follow up with Dr. Swanson in a week. (*Id.*). Plaintiff was discharged on April 11, 2013, and while Defendants take the position that Defendant informed the nurse he was "ready to go", Plaintiff disputes this. (Doc. 66-1, p. 8). Plaintiff was given antibiotic and Motrin upon discharge (*Id.* at 9), and was not allowed to continue the painkiller Lortab due to IDOC policy prohibiting narcotic medication administration outside the HCU. (Doc. 64-2, p. 4).

On April 18, 2013, Defendant Larson examined Plaintiff in segregation for a sick call. (*Id.*). Plaintiff indicated that he had been feeling poorly, and Defendant Larson states that, upon examining Plaintiff, he found Plaintiff's temperature to be 100 degrees and his blood pressure of 150/90. (*Id.*). Plaintiff, however, disputes the temperature and blood pressure readings. Plaintiff states that Defendant Larson told him that Plaintiff had a temperature of 103 – 104 and that his blood pressure was higher than 150/90. (Doc. 66-1, p. 12). Regardless, Defendant Larson increased Plaintiff's antibiotic dosage (*Id.* at 11) and secured an appointment for Plaintiff to see Dr. Swanson the next day (Doc. 64-2, p. 4 – 5).

Plaintiff followed up with Dr. Swanson on April 19, 2013, and Dr. Swanson ordered that Plaintiff continue on the elevated antibiotic dosage twice a day and take an over the counter antihistamine. (*Id.* at 5). On April 23, 2013, Defendant Larson made a request to the Collegial Review Board that Plaintiff be allowed to see Dr. Swanson again, and Plaintiff saw Dr. Swanson again on April 25, 2013. (*Id.* at 5). Dr. Swanson found

Plaintiff to be healing as expected, indicated that the area would heal in two to four weeks, and that Plaintiff should follow up in two to three weeks. (*Id.*). The same day, Defendant Larson approved Dr. Swanson's recommendations to have Plaintiff follow up in two to four weeks. (*Id.*).

On May 2, 2013, during a sick call visit with Plaintiff by Defendant Larson, Plaintiff told Defendant Larson that his mouth was improving and requested Tylenol for pain, Excedrin for headaches, and hydrocortisone for rash and eczema, all of which were prescribed by Dr. Larson. (*Id.*). On May 7, 2013, Defendant Larson requested authorization for the Collegial Review Board to send Plaintiff to visit Dr. Swanson for a follow up appointment in two to three weeks, and the Board responded by sending Defendant Larson a "90 day global" authorization. (*Id.*).

Plaintiff saw Dr. Swanson on May 16, 2013, and Dr. Swanson noted that Plaintiff was healing well from the prior surgery. (*Id.*). He also noted that Plaintiff complained of pain in tooth number four and found mobility in that tooth. (*Id.*). Dr. Swanson ordered scheduling of the removal of tooth four. (*Id.*). On May 21, 2013, Defendant Larson saw Plaintiff during a sick call to follow up after Plaintiff's visit with Dr. Swanson. (*Id.*). Plaintiff told Defendant Larson that three days prior he had blood and drainage from the surgical site. (*Id.*). Defendant Larson found good healing in the mouth, and prescribed the requested medications of Excedrin Migraine, Eucerin cream, hydrocortisone cream, and Tylenol. (*Id.*). Plaintiff was transferred from Big Muddy on June 19, 2013. (*Id.* at 6). He filed suit on August 27, 2014, pleading counts of

deliberate indifference in violation of the Eighth Amendment against Defendants Larson and Furlong. (Docs. 1, 8).

### 2. Defendant Nalley

The Court notes that while Plaintiff filed a Response to the summary judgment motion filed by Defendants Furlong and Larson, he did not file a Response to Defendant Nalley's motion. Since Plaintiff has failed to respond to Defendant Nalley's motion, the Court considers the facts set forth by Defendant Nalley as undisputed. *See* **FED.R.CIV.P. 56(e); SDIL-LR 7.1(c).** *See also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995) (a failure to respond constitutes an admission that there are no undisputed material facts). As the Court is deciding a summary judgment motion, however, it views those facts in the light most favorable to Plaintiff. *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012).

On April 17, 2013, Plaintiff was in the Big Muddy HCU waiting to be seen by the dentist. (Doc. 66-7, p. 1). When Plaintiff entered the HCU, he spoke to Defendant Nick Nalley, a correctional officer at Big Muddy, and said "Good thing you're here Nalley because they're probably going to need you in here." (*Id.*).

When Defendant Nalley inquired as to why he was going to be needed, Plaintiff responded with profanity and expressed his anger toward the dentist, and stated that Defendant Nalley was "going to want to be in there when I go in there." (*Id.* at 2). In order to prevent medical staff from being harmed, Defendant Nalley then restrained Plaintiff and escorted him to segregation. (*Id.*). Nalley told Plaintiff that he would

take Plaintiff back to the HCU to see the dentist once Plaintiff had calmed down. (*Id.*). At some point, however, Plaintiff began yelling at Defendant Nalley, and threatened to kill and spit in Defendant Nalley's face. (*Id.* at 2). As Defendant Nalley left segregation, Plaintiff told him "You better hope they transfer me. I'm going to get you…." (*Id.* at 2).

Defendant Nalley wrote Plaintiff two disciplinary tickets. One for intimidation and threats while Plaintiff was in the HCU, and another for intimidation and threats while Plaintiff was in segregation. (*Id.* at 1). The Big Muddy Adjustment Committee held a hearing on both tickets on April 18, 2013. (Doc. 66-4, p. 1). Plaintiff was found guilty of Offense 206, Intimidation and Threats, and recommended the revocation of three months' good conduct credit, which was later reduced to one month. (*Id*; Doc. 66-3). The committee made specific findings that Plaintiff was guilty of engaging in intimidation and threats against both the dentist and Defendant Nalley. (Doc. 66-4, p. 1). As part of his lawsuit filed on August 27, 2014, Plaintiff pleaded counts against Defendant Nalley alleging deliberate indifference in violation of the Eighth Amendment and retaliation in violation of the First Amendment. (Docs. 1, 8).

### SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions. The rule states that summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. ***Archdiocese of Milwaukee v.***

*Doe*, **743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED.R.CIV.P. 56(a))**. The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986)**. A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986)**. *Accord Bunn v. Khoury Enterpr. Inc.*, **753 F.3d 676 (7th Cir. 2014)**.

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, **699 F.3d at 994;** *Righi v. SMC Corp.* , **632 F.3d 404, 408 (7th Cir. 2011);** *Delapaz v. Richardson*, **634 F.3d 895, 899 (7th Cir. 2011)**. As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, **756 F.3d 542 (7th Cir. 2014)**.

ANALYSIS

1. **Claims against Furlong and Larson**

Plaintiffs' claims against Defendants Furlong and Larson allege deliberate indifference in violation of the Eighth Amendment. Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, **414 F.3d**

645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (stating that a prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards"); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Although a prison official may not continue a course of treatment he knows is blatantly ineffective, prisoners are not entitled to receive unqualified access to healthcare. *See Holloway*, 700 F.3d at 1073-74. A doctor may provide the care he feels is reasonable so long as it falls within a "range of acceptable courses based on prevailing standards in the field." *Id.* at 1073.

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first prong is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and

wanton infliction of pain if not treated.  *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010).**  *Accord Farmer v. Brennan*, **511 U.S. 825, 828 (1994) (violating the** *Eighth Amendment* **requires "deliberate indifference to a** *substantial* **risk of** *serious* **harm.") (internal quotation marks omitted) (emphasis added).**  Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable.  *Greeno*, **414 F.3d at 652-53**.

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health.  *Greeno*, **414 F.3d at 653.**  The plaintiff need not show the defendant literally ignored his complaint, just that the defendant was aware of the serious medical condition and either knowingly or recklessly disregarded it.  *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008).**  Deliberate indifference is not negligence; rather it is more akin to intentional wrongdoing.  *McGee v. Adams*, **721 F.3d 474, 480 (7th Cir. 2013).**  The standard is criminal recklessness, and even gross negligence will not meet this standard.  *Id.* **at 481**.

### a. Dr. Furlong

The facts viewed in Plaintiff's favor demonstrate that no reasonable juror could find that Defendant Furlong was deliberately indifferent toward Plaintiff's serious medical needs.  Here, the Court focuses on the factual dispute surrounding the point at which the medial root was lost in Plaintiff's sinus cavity.  Defendants take the position

that that root was not lost until Plaintiff's visit in early March, after the root fractured during the attempted tooth extraction on February 7. Defendants rely on an affidavit from Defendant Furlong and a series of notes written by Dr. Furlong. Plaintiff, on the other hand, takes the position that the root ended up in his sinus cavity during the initial tooth extraction attempt on February 7. Plaintiff argues that Defendants have no medical records demonstrating the root fell into the sinus cavity during the March extraction attempt, and in actuality, it fell in to the cavity on February 7.

While the Court finds the notes largely illegible and cannot determine whether they indicate the date when the root was lost, they do provide support for Defendant Furlong's contentions and his affidavit. The notes indicate a final procedure was attempted on March 4, 2013. This would correlate with Defendant's affidavit indicating that date was when he attempted to extract the broken root. Plaintiff's claims to the contrary are pure speculation. The evidence demonstrates Dr. Furlong, after breaking the tooth during the extraction, later attempted to remove the root. When that was unsuccessful, he began the process of referring Plaintiff to an outside specialist. Based on these facts, no reasonable juror could find that Defendant Furlong was deliberately indifferent to Plaintiff's serious medical needs.

### b. *Dr. Larson*

The record also fails to demonstrate that Defendant Larson was deliberately indifferent. As best the Court can tell, Defendant Larson did not become actively involved in Plaintiff's dental issues until after Plaintiff's initial visit with Dr. Swanson.

Once Larson became involved, however, he acted promptly and appropriately to see that Plaintiff was getting care administered to him. Defendant Larson acted promptly to approve Dr. Swanson's recommendations, to get approval for Plaintiff to obtain follow up visits with Dr. Swanson, and to personally administer care for Plaintiff's needs. On multiple occasions, Defendant Larson provided Plaintiff antibiotics and painkillers he requested. Further, the fact that Plaintiff could not take Lortab outside of the HCU was not Defendant Larson's fault, since it was an IDOC policy. Though Plaintiff disputes his exact temperature and blood pressure during the April 18 visit, the factual dispute is immaterial. What is undisputed is that Plaintiff had an elevated temperature and blood pressure during that visit, and that Defendant Larson increased Plaintiff's antibiotic dosage and secured an appointment with Dr. Swanson for the next day. From the facts before the Court, and in the briefing, is not clear what more Plaintiff wanted Defendant Larson to do. Regardless, the Eighth Amendment does not guarantee Plaintiff specific care tailored to his desire. ***Owens v. Duncan*, 2017 WL 119173, \*6 (S.D. Il. Jan. 12, 2017) (citing *Holloway*, 700 F.3d at 1073 – 74; *Forbes*, 112 F.3d at 267).** Rather, Plaintiff is entitled to reasonable measures to meet his serious medical needs. ***Owens*, 2017 WL 119173 at \*6**. The evidence is such that no reasonable juror could find that Defendant Larson did anything other than take such reasonable measures, and Larson is therefore entitled to summary judgment.

    **2. Claims against Nalley**

Though Plaintiff has alleged claims of deliberate indifference and retaliation

against Defendant Nalley, as argued by Nalley, those claims are barred under the Supreme Court's holdings in **Heck v. Humphrey, 512 U.S. 477 (1994)** and *Edwards v. Balisok*, **520 U.S. 641 (1997)**. In *Heck*, the Supreme Court held that unless a state prisoner could demonstrate that a sentence or conviction had been previously invalidated, a prisoner is barred from bringing a suit for money damages under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Edwards*, **520 U.S. at 643 (quoting** *Heck*, **512 U.S. at 487) (internal quotations omitted)**. In *Edwards*, the Court extended *Heck* to suits brought by prisoners alleging violations of their rights in prison disciplinary proceedings. *See Edwards*, **520 U.S. at 648**. Where a claim is barred by *Heck* and *Edwards*, the proper vehicle for a plaintiff to challenge his sentence is through a habeas corpus petition. *Muhammad v. Close*, **540 U.S. 749, 751 (2004).**

Since recovery on the claims against Defendant Nalley would imply the invalidity of the Big Muddy Adjustment Committee's finding of guilt, those claims must be dismissed. Plaintiff's retaliation claim is based on the allegation that Defendant Nalley issued a *false* disciplinary report on April 17 in retaliation for raising concerns about proper dental care. (*See* Doc. 8, p. 10). Defendant Nalley, on the other hand, indicates that he issued Plaintiff a disciplinary ticket due to Plaintiff's threats and intimidation made against the dentist and Nalley. In finding Plaintiff guilty of the conduct alleged by Defendant Nalley, the Adjustment Committee found that Plaintiff made such threats and intimidation. Therefore, in order to demonstrate the issuance of a false disciplinary

report in retaliation for protected speech, Plaintiff would have to demonstrate that he did not threaten and intimidate Defendant Nalley and HCU staff as found by the Adjustment Committee. The Court recognizes that to recover on a retaliation claim the protected speech need only be a motivating factor, and that retaliatory official action violates the Constitution, even if the officer would be otherwise authorized to take that action in the absence of a retaliatory motive. *See Mays v. Springborn*, **719 F.3d 631, 634 (7th Cir. 2013)** (**citing** *Mt. Healthy Board of Education v. Doyle*, **429 U.S. 274 (1977))**; *Zimmerman v. Tribble*, **226 F.3d 568, 573 (7th Cir. 2000)**. Here, however, Plaintiff has alleged that the disciplinary ticket was false (Doc. 1, p. 10), and that the issuance for the *false* ticket was done in retaliation for protected speech. Therefore, in order to recover, Plaintiff would have to imply the invalidity of the Adjustment Committee's findings. *See Wooten v. Law*, **118 Fed.Appx. 66, 69 (7th Cir. 2004) ("[W]hether a claim is barred by** *Heck* **turns on the plaintiff's allegations. The theoretical possibility of a judgment for the plaintiff based on findings that do not call his conviction into question is irrelevant if the plaintiff's own allegations foreclose that possibility.")**. *See also, Okoro v. Callaghan*, **324 F.3d 488, 490 (7th Cir. 2003) ("[I]f [a plaintiff] makes allegations that are inconsistent with the conviction's having been valid** *Heck* **kicks in and bars his civil suit.") (citing** *Edwards*, **520 U.S. at 646 – 48;** *Ryan v. DuPage County Jury Commission*, **105 F.3d 329, 330 – 31 (7th Cir. 1996))**.

      The same analysis holds true for Plaintiff's deliberate indifference claim as well. Plaintiff's deliberate indifference claim against Defendant Nalley is "inextricably

intertwined" with his disciplinary conviction.  *See Barnett v. Bates*, **2013 WL 2403264, *4 (S.D. Il. May 31, 2013).**  As with his retaliation claim, Plaintiff's allegation is that he was placed in segregation after being issued a false disciplinary ticket by Defendant Nalley and refused medical care.  (Doc. 8, p. 3).  Again, however, the Adjustment Committee found that Plaintiff was removed from the HCU due to threats he was making, and for Plaintiff to prevail on his claim that Defendant Nalley was deliberately indifferent to Plaintiff's serious medical needs, Plaintiff would have to argue that he was not making threats in the HCU, thereby *implying* the invalidity of his disciplinary conviction.  *See Barnett*, **2013 WL 2403264 at *4 (where prisoner claimed that prison staff retaliated against him by allowing him to be sexually assaulted, and where disciplinary committee had found prisoner guilty of falsifying report of the alleged sexual assault, the prisoner's retaliation claim was barred by** *Heck* **and** *Edwards* **as it implied the invalidity of his disciplinary conviction)**.  Plaintiff's claims against Defendant Nalley should therefore be dismissed.[1]

## Conclusion

The evidence before the Court is not sufficient for a jury to find that Defendants Furlong and Larson were deliberately indifferent in their treatment of Plaintiff.  The Motion for Summary Judgment filed by Defendants Larson and Furlong (Doc. 63) is

---

[1] Even assuming *arguendo* that *Heck* and *Edwards* did not bar Plaintiff's claims against Defendant Nalley, the undisputed facts nonetheless demonstrate that Defendant would be entitled to summary judgment. The undisputed facts demonstrate no evidence of retaliatory motive on Nalley's part.  Additionally, the undisputed facts demonstrate that Defendant Nalley removed Plaintiff from HCU and placed in him in segregation for the safety and security of HCU staff—not due to a criminally negligent disregard for any serious medical need by Plaintiff.

therefore **GRANTED**.  In addition, since Plaintiff's claims against Defendant Nalley are barred by the Supreme Court's holdings in *Heck* and *Edwards*, Plaintiff's claims against Defendant Nalley shall be dismissed and Defendant Nalley's Motion for Summary Judgment (Doc. 65) is **GRANTED**.  Plaintiff's claims against all Defendants are **DISMISSED with prejudice**.  The Clerk of Court shall enter judgment against Plaintiff and close the case.

    **IT IS SO ORDERED**.
    DATED: 3/28/2017

    */s/ Stephen C. Williams*
    STEPHEN C. WILLIAMS
    United States Magistrate Judge